[677 NYS2d 544]

MADELEINE ORLOFF et al., Appellants-Respondents, v WEINSTEIN ENTERPRISES, INC., et al., Respondents-Appellants.

First Department, September 10, 1998

## APPEARANCES OF COUNSEL

*Joseph J. Saltarelli* of counsel (*Myron D. Cohen* on the brief; *Hunton & Williams,* and *Calamari & Saltarelli,* attorneys), for appellants-respondents.

*Sheldon Raab* of counsel (*Anthony E. Satula, Jr., Arthur S. Rublin* and *Peter J. Mastaglio* on the brief; *Fried, Frank, Harris, Shriver & Jacobson,* and *Cullen & Dykman,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

LERNER, P. J.

Plaintiffs Madeleine Orloff and Linda Jessogne are minority shareholders of defendant Weinstein Enterprises, Inc. Together, they own a 9.8% interest in the corporation's common stock, which was given to them by their grandfather, Joseph Weinstein, prior to his death in 1963. The late Mr. Weinstein, who founded the corporation in 1960, was also the founder and CEO of J.W. Mays, Inc., a public corporation, which at one time was engaged in business as a retail department store and is presently being operated as a real estate holding company. Mr. Weinstein had formed Weinstein Enterprises as a close corporation to hold his personal assets and distribute his estate to members of his family. The company's sizable assets include an approximate 40% interest in J.W. Mays and other marketable securities and various real estate holdings, including commercial properties in New York, Missouri and West Virginia.

This dispute apparently has its origins in an unsuccessful challenge to the probate of Mr. Weinstein's will brought by his daughter, Florence Felmus, and her husband, who is now deceased. Plaintiffs are the children of Mr. and Mrs. Felmus. Defendant Sylvia Shulman is Mr. Weinstein's other daughter and Florence's sister. After Mr. Weinstein's death, the Shulman family was given a controlling interest in Weinstein Enterprises with a total of 57% of its shares, whereas Mrs. Felmus and her children received no disposition "because of benefactions made during [Mr. Weinstein's] life". However, since the passing in 1973 of Celia Weinstein, Joseph's widow,

33% of the shares are owned on Florence Felmus' behalf as income beneficiary in trust for life. Defendant Max Shulman is Sylvia's husband and former CEO of both Mays and Weinstein Enterprises. Their son, defendant Lloyd Shulman, is the current CEO of both corporations. The aforesaid will contest resulted in a permanent rift between the Shulman and Felmus families and remains the cause of hostility and the basis for the ill feelings harbored by the Shulmans toward plaintiffs for over 30 years. Plaintiffs, however, have been paid dividends on their interest regularly, since 1963.

Under the Shulmans' stewardship, Weinstein Enterprises has been a highly profitable venture. Nevertheless, plaintiffs allege that as majority shareholders, defendants have engaged in acts of waste and mismanagement of corporate assets for their own benefit at the expense of the minority shareholders. In particular, plaintiffs allege that defendants caused the corporation to purchase a large farm in upstate New York for the exclusive recreational use of the Shulman family and which they caused to be rented to defendant Lloyd Shulman at below-market rates; that the company had pledged its own securities as collateral for a $3 million loan to J.W. Mays without receiving adequate compensation; and that Shulman family members were paid excessive corporate salaries. Plaintiffs further allege that during plaintiff Orloff's tenure as a director of Weinstein Enterprises, she had been denied an effective voice in management because she was excluded from board meetings, repeatedly denied access to corporate books and records, and was threatened with a cut in dividends in retaliation for her requests for information; and that plaintiffs were the victims of disparate treatment by the majority shareholders, inasmuch as they had redeemed the shares held by Mr. Weinstein's widow but had refused to redeem plaintiffs' shares.

In their amended complaint, which asserts a single cause of action for breach of fiduciary duty, plaintiffs seek compensatory damages as a result of defendants' allegedly "oppressive conduct". They also seek equitable relief in the form of an injunction against such conduct, a buyout of their shares, an accounting, access to corporate records, a reduction of allegedly excessive salaries and a declaration of reasonable dividends or a reduction of distribution of capital. Significantly, inasmuch as plaintiffs own less than 20% of the corporate stock, they assert no remedy under Business Corporation Law § 1104-a.

After extensive discovery, defendants moved for summary judgment dismissing the complaint on the ground that

defendants as a matter of law have not engaged in any oppressive conduct against plaintiffs. Plaintiffs opposed, arguing that triable issues of fact exist that preclude such relief.

The motion court rejected plaintiffs' allegations of waste and mismanagement as unsupported, but nevertheless, upon searching the record, granted summary judgment in favor of the nonmoving plaintiffs to the extent of finding that defendants were guilty of "oppressive" conduct toward them as set forth in Business Corporation Law § 1104-a (a) (1) in that the majority had failed to act with "probity and fair dealing" and had engaged in conduct that was "burdensome, harsh and wrongful" (citing *Gimpel v Bolstein*, 125 Misc 2d 45, 50). In particular, the court found that during plaintiff Orloff's tenure as a director from 1985 to 1989, she was only given notice of some of the board meetings at the majority's discretion, and that, along with Ms. Jessogne, she is presently relegated to receiving only dividends for shares that they are unable to dispose of fairly, while the majority shareholders enjoy salaried positions with bonuses and retirement benefits. Although plaintiff Orloff admittedly has limited education and work experience, and has expressed her unwillingness to work with Lloyd Shulman, the motion court found nonetheless that plaintiff Orloff was wrongfully denied a corporate salary because the individual defendants have failed to demonstrate their qualifications to receive employment by the corporation.

Plaintiffs' subsequent motion for leave to amend the complaint was denied, and, upon granting defendants' cross motion to renew and reargue, the court adhered to its original determination. In so doing, the court referred "the issue of fashioning an appropriate remedy consistent with the determination herein" to a Special Referee to hear and report. The court, however, rejected, *inter alia*, the Special Referee's recommendation of a buyout of plaintiffs' shares as lacking authority and inappropriate. Instead, while noting that plaintiffs' expectations as minority shareholders who had inherited their interest were not comparable to those of an investor who chooses to participate in a business, the court found that their expectation was to participate "to some degree". Thus, the court granted plaintiffs access to information, requiring that a Felmus family member be elected a director, and directed dividends be distributed of an amount equal to at least 55% of annual corporate profits.

Initially, we note that plaintiffs have, in their amended complaint, deleted the originally pleaded prayer for a common-law

dissolution and now seek the remedy of a common-law buyout, a claim heretofore not judicially recognized. Plaintiffs sought to reinstate the dissolution claim in their second motion to amend made only after the motion court's finding of oppression. In any event, we need not consider whether the motion court was empowered to order a buyout of plaintiffs' shares under common-law principles (*see, Leibert v Clapp*, 13 NY2d 313), and if so, upon what measure or standard such relief should be granted, since we conclude that plaintiffs have failed to establish entitlement to any relief on this record.

To begin, there is no evidence in the record that plaintiffs had any reasonable expectation of assuming management positions in the company. Plaintiff Jessogne admittedly has no business or work experience. While Ms. Orloff worked for two years as a buyer for J.W. Mays, after being told she would no longer be sent on buying trips to Europe and despite having been offered a position as a salesperson she decided to resign. She then opened an antiques business that she operated for a few years. During her directorship, Ms. Orloff attended all annual board meetings, but was not informed of "special" interim board meetings held at the upstate headquarters. Defendants concede that they failed to so notify Ms. Orloff. They claim, however, that these special meetings involved ministerial matters and point out that minutes of the meetings were distributed and reviewed at all annual board meetings that Ms. Orloff did attend. Although plaintiffs claim that Ms. Orloff was excluded from having an active voice in important corporate decision making, they fail to show that decisions made in her absence were either significant, or adverse to the interests of the minority shareholders. Finally, plaintiffs do not show nor even allege in terms of the purported oppression by the majority that there was a violation of any resolution or bylaw of the corporation.

Accordingly, while plaintiff Orloff may have been excluded from some board meetings and denied access to corporate books and records, we find, as a matter of law, that such conduct fails to rise to a level entitling plaintiffs to any of the relief sought in the complaint or which was granted by the motion court.

Accordingly, the judgment of the Supreme Court, New York County (Diane Lebedeff, J.), entered June 26, 1997, which, in order to remedy defendants' oppressive conduct toward plaintiffs, directed, *inter alia*, that the individual defendants elect a member of the Felmus family to the board of directors and pay all shareholders dividends of 55% of annual corporate

profits if consistent with sound corporate practices, should be reversed, on the law and the facts, without costs, all affirmative relief granted to plaintiffs vacated, and the amended complaint dismissed. The appeals from orders of the same court and Justice, entered on or about February 15, 1995, November 1, 1995 and April 10, 1997, should be dismissed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the amended complaint.

SULLIVAN, NARDELLI, RUBIN and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, entered June 26, 1997, reversed, on the law and the facts, without costs, all affirmative relief granted to plaintiffs vacated, and the amended complaint dismissed. Appeals from orders, same court and Justice, entered on or about February 15, 1995, November 1, 1995 and April 10, 1997, dismissed, without costs.